<div align="center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

</div>

| | |
|---|---|
| RESTORATION HARDWARE, INC., et al., | Case No. 22-cv-03054-JSC |
| Plaintiffs, | **ORDER RE: DEFAULT JUDGMENT** |
| v. | Re: Dkt. No. 70 |
| SICHUAN WEI LI TIAN XIA NETWORK TECHNOLOGY CO., LTD, et al., | |
| Defendants. | |

Plaintiffs Restoration Hardware, Inc., and RH US LLC (collectively, "RH") bring this suit against a series of defendants for intellectual property violations and unfair competition. (Dkt. No. 28.) Defendants have not appeared. After the Clerk of the Court entered default against Defendants, RH moved for default judgment. (Dkt. No. 70.) After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS RH's motion for default judgment. The hearing scheduled for April 6, 2023 is vacated.

<div align="center">

**BACKGROUND**

</div>

**I.      Factual Allegations**

    **A.      The Parties**

        **1.      RH**

RH sells luxury home furnishings, including furniture, textiles, and lighting products. (Dkt. No. 28 ¶ 1.)[1] The lighting products are particularly at issue here. (*Id.* ¶ 2.) RH uses artistic photographs to promote its lighting products. (*Id.* ¶ 29.) RH also uses descriptions of each product (known as "product copy") in its catalogues and on its websites. (*Id.*)

RH protects its intellectual property through copyright protections, trademark protections,

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

and patent protections.  With regard to copyrights, RH alleges it owns copyrights in the product photographs, product copy, and lighting design at issue in this case.  (*Id.* ¶ 30; *see also* Dkt. No. 28-1.)  For trademark protections, RH describes its use of its marks in commerce, including the registered "RESTORATION HARDWARE" mark, and details each unregistered mark's first use.  (Dkt. Nos. 28-3 and 28-4.)[2]  Finally, RH owns design patent No. D892, 385 S protecting a lamp design.  (Dkt. No. 28-5.)

### 2. Defendants

RH alleges four groups of defendants are infringing upon its intellectual property rights: (1) the "Rain & Light" group: Sichuan Wei Li Tian Xia Network Technology Co., Ltd., Hefei Gengzong Trading Co., Ltd., and Chengdu Weiqi Digital Technology Co.; (2) the "Yiosi" group: Zhongshan Tuxiang Lighting Co., Ltd., Zhongshan Yiosi Lighting Co., Ltd., Wang Xurui, and "Xie"; (3) the "Koko Lights" group: Jamya Limited, Koko Light LTD, and Alfred Chen; and (4) Emilya Limited d/b/a Herman Lighting and Hurd Light.

### B. The Allegations

RH alleges Defendants engaged in Copyright Infringement under 17 U.S.C. § 501, Federal Trademark Infringement under 15 U.S.C. § 1114, Federal Unfair Competition under 15 U.S.C. § 1125(a), Design Patent Infringement under 35 U.S.C. § 271, and California Unfair Competition under Cal. Bus. Prof. Code § 17200.

### 1. Rain & Light

Together, the Rain & Light defendants operate websites such as "rainandlight.com" and "rainandlights.com."  (Dkt. No. 28 ¶¶ 6-8; Dkt. No. 55.)  Through these websites, the Rain & Light defendants operate an ecommerce store to sell over 300 lighting products.  (*Id.* ¶ 37.)  Rain & Light uses approximately 200 of RH's copyright photographs to sell "knockoff" or confusingly similar products on its websites.  (*Id.* ¶ 38; *see also* Dkt. No. 28-6.)  Rain & Light also uses RH's

---

[2] Aside from RESTORATION HARDWARE, the "RH Marks" relevant here are AQUITAINE, ARCACHON, BOULE DE CRISTAL, CAMINO, CANNELE, CASCADA, ECLATANT, FULCRUM, HARLOW, MACHINIST, MARIGNAN, PAUILLAC, PEARL, RAIN, RAVELLE, RHYS, SAN MARCO, SAVILE, SPIRIDON, UTILITAIRE, and WRIGHT.  (Dkt. Nos. 28-3, 28-4.)

United States District Court
Northern District of California

product copy to promote their products.  (*See* Dkt. No. 28-7.)  Finally, Rain & Light sells a product that appears identical to RH's patented light design.  (Dkt. No. 28-10.)

RH completed test purchases from Rain & Light.  (Dkt. No. 28 ¶ 25; Dkt. No. 9-1 at 35.)  Through email communications, RH's support team stated "[w]e currently specialize in serving the US market and can ship to the US."  (Dkt. No. 9-1 at 28.)  RH paid a PayPal account known as "Keysyes" that is associated with the email <xiaoxiongwenhua@alfiego.com> during the test purchases.  (*Id.*)

### 2.    Yiosi

Yiosi also uses the RH's copyrighted photographs and marks to sell knockoffs of the RH lighting designs on its <yiosilamp.com>.  (Dkt. No. 28 ¶¶ 45-46.)  And Yiosi sells a product that RH alleges infringes upon its patented lighting design.  (*Id.* ¶ 47.)  RH alleges it has previously confronted Yiosi regarding infringement.  (*Id.* ¶ 44.)  Yiosi has repeatedly complied with takedown requests only to recommence and expand its infringement shortly thereafter.  (*Id.*)  Yiosi also supplies the other defendants with their "knockoff" or confusingly similar RH products. (*Id.* ¶¶ 48, 53, 60)

### 3.    Koko Lights

Jamya Limited and Koko Light LTD operate the <kokolights.com> website.  (*Id.* ¶¶ 13-15.)  Alfred Chen is identified as the CEO of Koko Lights on the <kokolights.com> website.  (*Id.*)  As with Rain & Light and Yiosi, Koko Lights uses RH's copyrighted photographs and marks to sell imitations of the RH lighting designs.  (*Id.* ¶¶ 49-52.)  When RH conducted a test purchase from Koko Lights' website, the product was shipped from Yiosi.  (*Id.* ¶ 53.)

### 4.    Emilya Limited

Yiosi also supplies lighting products to Emilya Limited, which in turn sells its products on two online ecommerce stores--<hermanlighting.com> and <hurdlight.com>.  (*Id.* ¶ 54.)  As with the other defendants, these websites leverage RH's copyrighted works and marks to sell similar lighting products.  (*Id.* ¶¶ 55-59.)  RH also conducted test purchases from Emilya Limited and received products from Yiosi.  (*Id.* ¶ 60.)

//

United States District Court
Northern District of California

## II.    Procedural Background

RH initially brought this suit for copyright infringement in May 2022 against only the Rain & Light defendants and the Yiosi defendants.  (Dkt. No. 1.)  The Court issued a temporary restraining order enjoining those defendants' use of copyrighted works and trademarks, locking website domain names, and freezing certain financial accounts related to the alleged infringing activities.  (Dkt. No. 13.) The Court also authorized RH to serve defendants via the email addresses used during test purchases.  (*Id.*)  The Court extended the TRO to cover additional websites. (Dkt. No. 26.) And, after considering the evidence provided, the Court granted RH's request to convert the TRO to a preliminary injunction.  (Dkt. No. 29.)

RH then filed a First Amended Complaint ("FAC") against the original defendants and additional alleged infringers discovered via post-suit investigation—the Koko Lights defendants and Emilya Limited.  (Dkt. No. 28.)  The Court again granted a TRO against all defendants, authorized service via email, (Dkt. No. 36), and then later converted that TRO to a preliminary injunction, (Dkt. No. 44).  RH subsequently provided evidence some defendants defied the Court's Orders and created new websites to host the infringing photos.  (Dkt. No. 48). The Court expanded the injunction to further lock and disable those new domain names.  (Dkt. Nos. 53, 56).  When RH attempted to file a Second Amended Complaint to add other alleged infringers, the Court denied leave to amend, given the proposed amendment could not satisfy Federal Rule of Civil Procedure 20.  (Dkt. No. 67.)  The Court did, however, expand the preliminary relief to cover a third Rain & Light website, <rainandlighting.com>.  (*Id.*)

Despite service via email at each stage, (*see*, *e.g.*, Dkt. No. 42), Defendants never appeared at the preliminary injunction hearings, nor opposed any requested relief.  The Clerk entered default against Defendants on February 24, 2023.  (Dkt. No. 69.)  RH brought this motion for default judgment shortly thereafter.  (Dkt. No. 70.)

## DISCUSSION

## I.    Jurisdiction and Service of Process

Courts have a duty to examine both subject matter and personal jurisdiction when default judgment is sought against a non-appearing party.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

United States District Court
Northern District of California

### A.    Subject Matter Jurisdiction

The Court has federal question subject matter jurisdiction over RH's copyright, trademark, and patent infringement claims.  *See* 17 U.S.C. § 501, 15 U.S.C. § 1114, 15 U.S.C. § 1125(a); 35 U.S.C. § 271.  The Court may exercise supplemental jurisdiction over RH's California Unfair Competition claim under Cal. Bus. Prof. Code § 17200.  *See* 28 U.S.C. § 1367(a).

### B.    Personal Jurisdiction

"The Court has personal jurisdiction over Defendants under the California long arm statute, Civ. Proc. Code § 410.10 or, alternatively, under the Federal long-arm statute, Fed. R. Civ. Proc. 4(k)(2), because Defendants have sold products to residents of California, including [RH], through interactive Internet websites."  *Oomph Innovations LLC v. Shenzhen Bolsesic Elecs. Co.*, 2020 WL 5847505, at *2 (N.D. Cal. Sept. 30, 2020) (citing *Mysfyt, Inc. v. Lum*, 2016 WL 6962954 at *3 (N.D. Cal., Nov. 29, 2016)).  Given these direct sales of infringing goods to California residents, Defendants (1) purposefully directed their infringing actions at California residents and (2) the harms occurred in California.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-803 (9th Cir. 2004).  Thus, the exercise of personal jurisdiction here is reasonable.  *See*, *e.g.*, *Oomph* 2020 WL 5847505, at *2 (finding personal jurisdiction over defendants in a patent infringement case when defendants sold products to forum residents).

### C.    Service of Process

Finally, Defendants received notice of this action via the email addresses Defendants used to communicate with RH during the test purchases.  (*See* Dkt. No. 42.)  As the Court previously held, service via email complies with Federal Rule of Civil Procedure 4(f)(3) as to these Defendants.  (Dkt. No. 13 at 5; Dkt. No. 36 at 6.)

## II.    Default Judgment

After entry of default, a court may, in its discretion, enter default judgment.  *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, the Court may consider:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)

the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Well-pled allegations in the complaint regarding liability are taken as true, except to establish the amount of damages.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

### A.     Possibility of Prejudice to RH

The first factor weighs in favor of RH.  RH will be prejudiced without a default judgment because Defendants did not respond to the complaint and, absent default judgment, RH would be without a remedy.  *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054–55 (N.D. Cal. 2010).

### B.     Merits of Substantive Claims & Sufficiency of the Complaint

The second and third factors, "often analyzed together," require the plaintiff "to plead facts sufficient to establish and succeed upon its claims."  *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  Taking the allegations in the FAC as true, RH meets its burden as to each claim.

#### 1.     Copyright Claims

To prevail on its copyright infringement claims, RH must (1) show ownership of the copyrights, and (2) a violation of at least one exclusive right under 17 U.S.C. § 106.  *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  RH meets both criteria as to each allegation as to each defendant group.  As discussed in detail above, RH provides detailed charts as to each defendant group, indicating RH's work, RH's copyright registration for that item, and each defendant's infringing use.  (*See, e.g*, Dkt. Nos. 28-1, 28-6.)  Taken as true, these lengthy side-by-side exhibits—detailing RH's ownership and Defendants' infringing use—meet RH's burden to plead facts sufficient to establish Defendants committed copyright violations here.

#### 2.     Trademark & Unfair Competition Claims

"Actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."  *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (citing *Academy of Motion Picture Arts & Sciences v. Creative House Promotions,*

1    *Inc.,* 944 F.2d 1446, 1457 (9th Cir. 1991)).  *See also Real Estate Corp. v. Sandlin,* 846 F.2d 1175,

2    1178 (9th Cir.1988) (holding that under both, the "ultimate test" is "whether the public is likely to

3    be deceived or confused by the similarity of the marks").  Thus, the Court analyzes these two

4    claims together.

5         The elements of a claim for trademark infringement under the Lanham Act are: "(1)

6    ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of

7    the mark is likely to cause confusion, or to cause mistake, or to deceive consumers."  *Reno Air*

8    *Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006).

9                                    **a.    Ownership**

10        For the registered "RESTORATION HARDWARE" mark, RH adequately proves

11   ownership. "Registration of a mark is prima facie evidence of the validity of the mark, the

12   registrant's ownership of the mark, and the registrant's exclusive right to use the mark in

13   connection with the goods specified in the registration."  *Pom Wonderful LLC v. Hubbard*, 775

14   F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).  When, as here, proof of registration

15   is uncontested, the ownership interest element of a trademark infringement claim is met.  *See*

16   *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219 (9th Cir.1996).

17        For the unregistered trademarks, *see supra* at 2 n.2, "the standard test of ownership is

18   priority of use," and "the party claiming ownership must have been the first to actually use the

19   mark in the sale of goods or services."  *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d

20   1213, 1226 (9th Cir. 2008) (citations omitted).  RH alleges it used these marks as of certain dates,

21   (*see* Dkt. No. 28-4), it used the marks continuously since, and those first-use dates pre-date

22   Defendants' use of the same marks.  (Dkt. No. 28 ¶¶ 34, 82.)  Thus, RH meets its burden to

23   establish ownership.

24                              **b.    Likelihood of Confusion**

25        RH also meets its burden to establish likelihood of confusion between its usage of the

26   marks and Defendants' usage.  The Ninth Circuit directs courts to:

27              look to the following eight *Sleekcraft* factors for guidance in
             assessing the likelihood of consumer confusion: (1) strength of the
28           protected mark; (2) proximity and relatedness of the goods; (3) type

1

of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 810 n. 19 (9th Cir. 2003).

2

3

4

5

Importantly, although these *Sleekcraft* factors "channel the analytical process," they do not necessarily dictate a result. *Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1141 (9th Cir. 2002). Because the factors are "fluid," a "plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 631 (9th Cir. 2005). Thus, despite the important role that the *Sleekcraft* factors play in determining whether a likelihood of confusion exists, it is "the totality of facts in a given case that is dispositive." *Entrepreneur Media,* 279 F.3d at 1140 (internal quotation marks omitted).

6

7

8

9

10

11

775 F.3d at 1125.

12

Given the "totality of facts" here, RH has shown a significant likelihood of confusion exists. Indeed, the marks used here are often the same, not just similar. The seventh *Sleekcraft* factor—Defendants' intent—is particularly relevant here. The examples listed in the complaint strongly suggest a particularly egregious intent to confuse consumers familiar with RH's marks. For example, Yiosi markets a product called "Restoration & Hardware Camino" while RH markets a product called "Camino." (Dkt. No. 28 ¶ 46.) Rain & Light, Koko Lights, and Emilya Limited engage in the same behavior, naming products identically to RH's products (alongside RH's copyrighted photos of those products). (*Id.* ¶¶ 41, 52, 56.) Given these explicit attempts to pair RH's marks alongside RH's copyrighted photos, Defendants' intent could only be to trick consumers and leverage RH's goodwill for their benefit. In other words, based on the totality of the circumstances, it is unlikely Defendants' usage of these marks was an honest mistake.

13

14

15

16

17

18

19

20

21

22

23

Thus, given RH establishes ownership over the marks and likelihood of confusion, RH meets its burden to plead "facts sufficient to establish and succeed upon its claims" for trademark infringement and unfair competition. *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1048.

24

25

26

### 3.    Patent Claims

27

Finally, RH meets its burden to plead facts establishing a successful patent infringement claim against Rain & Light and Yiosi. A design patent is infringed when "in the eye of an

28

8

ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc., v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (*quoting Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).  Put differently, "[i]nfringement is determined by visual comparison of the pictured design and the accused article." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1363 (Fed. Cir. 2013) (citing *Gorham*, 81 U.S. at 528).

Visual comparison here reveals an ordinary observer would be induced to purchase the infringing product, supposing it to be the patented RH design.  For example, the FAC displays the following side-by-side as to Rain & Light:



(Dkt. No. 28 ¶ 42.)  And the FAC provides a nearly identical side-by-side to support the allegations against Yiosi.  (*Id.* ¶ 47.)  An ordinary observer could mistake the infringing products here for the patented invention.  Thus, applying the ordinary observer test, RH meets its burden to plead facts sufficient to establish its patent infringement claims.

*** 

In sum, the second and third *Eitel* factors favor granting default judgment because RH pleads "facts sufficient to establish and succeed upon its claims." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1048.

//

United States District Court
Northern District of California

**C.      Money at Stake**

The fourth factor considers the amount of money at stake in relation to the seriousness of the defendant's conduct.  *Eitel*, 782 F.2d at 1471–72.  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in light of defendant's actions." *Tech. LED Intellectual Prop., LLC v. Revogi, LLC*, No. 18-CV-03827-JSC, 2019 WL 2716610, at *4 (N.D. Cal. June 27, 2019) (citation omitted); *see Eitel*, 782 F.2d at 1471–72.  "Conversely, default judgment may be appropriate where it is tailored to the defendant's specific misconduct." *Tech. LED*, 2019 WL 2716610, at *4 (cleaned up).  Unlike liability, the Court need not accept as true complaint allegations related to damages.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

RH requests $330,000 in statutory damages per defendant for violations of the Copyright Act.  That amount represents the maximum statutory damage amount under 17 U.S.C. § 504(c)(1) ("$30,000") for violations of 11 specific copyrights attached to the complaint.  (Dkt. No. 708 at 17; *see also* Dkt. No. 28-1.)  While this amount is not insignificant, "[t]he requested statutory damages are tailored—by the legislatures—to the underlying misconduct." *Vera v. FlexShopper, LLC*, No. 22-CV-01797-JSC, 2022 WL 4472069, at *6 (N.D. Cal. Sept. 26, 2022).  Thus, given the requested damage amount is tailored to the specific misconduct at issue, this factor also weighs in favor of granting default judgment.

**D.      Possibility of a Dispute Concerning Material Facts**

There is no indication the material facts are in dispute. The well-pleaded allegations in the complaint as to liability are deemed admitted.  *Geddes*, 559 F.2d at 560.

**E.      Excusable Neglect**

"This factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Vera v. FlexShopper, LLC*, No. 22-CV-01797-JSC, 2022 WL 4472069, at *6 (N.D. Cal. Sept. 26, 2022) (quoting *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).  RH properly served Defendants here.  (Dkt. No. 42.)  Thus, this factor weighs in favor of RH because it is unlikely Defendants' failure to appear and litigate this matter was the result of excusable neglect.

United States District Court
Northern District of California

### F.      Strong Policy Favoring Decisions on the Merits

"Our starting point is the general rule that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Thus, the seventh *Eitel* factor, by definition, weighs against entering default judgment. Here, Defendants' failure to answer RH's complaint "makes a decision on the merits impractical, if not impossible," making default judgment appropriate notwithstanding the policy against it. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

\* \* \*

In sum, each *Eitel* factor weighs in favor of granting default judgment here.

## III.    Remedies

RH requests both statutory damages and injunctive relief. In addition, RH requests the Court order PayPal to transfer the money in the frozen PayPal accounts to RH in partial satisfaction of the judgment against Defendants. The Court addresses each request in turn.

### A.      Statutory Damages

As discussed above, RH has pled facts sufficient to establish each defendant group infringed at least 11 works listed in Exhibit A to the FAC. (*See* Dkt. Nos. 28 ¶¶ 38, 45, 50, 66; 28-1; 28-6; 28-11.) As the Ninth Circuit recently described:

> The Copyright Act permits a copyright owner to elect an award of statutory damages in lieu of actual damages and profits. 17 U.S.C. § 504(c)(1) ("Section 504(c)(1)"). Section 504(c)(1) permits an owner to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." *Id.* Section 504(c)(1) limits statutory damages awards to $150,000 for willful infringement and $30,000 for innocent infringement. *Id.* § 504(c)(1), (2). "The number of awards available under this provision depends not on the number of separate infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189–90 (9th Cir. 2016).

*Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264–65 (9th Cir.), *cert. denied* 142 S. Ct. 343 (2021). RH requests each defendant be liable for $30,000—the maximum statutory penalty for innocent infringement—for the 11 infringed works. (Dkt. No. 70 at 17.)

United States District Court
Northern District of California

1   "In determining the appropriate amount of statutory damages to award on default

2   judgment, courts in this district have considered whether the amount of damages requested bears a

3   plausible relationship to [a p]laintiff's actual damages." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082,

4   1102 (N.D. Cal. 2014) (internal quotation marks and citations omitted).  "While a plaintiff in a

5   trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is

6   not entitled to a windfall." *Id.*  "Where a plaintiff cannot reasonably estimate actual damages, and

7   especially where they show only a few sales related to the counterfeit mark, courts are disinclined

8   to award the maximum statutory damages at the risk of a windfall." *Bestway Inflatables &*

9   *Material Corp. v. Doe*, No. 21-CV-05119-PJH, 2022 WL 118413, at *8 (N.D. Cal. Jan. 12, 2022)

10   (citing *Catron*, 70 F. Supp. 3d at 1103 (one sale); *Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH,

11   2010 WL 309249, at *4 (N.D. Cal. Jan. 19, 2010) (one sale); *Microsoft Corp. v. Ricketts*, No. C

12   06–06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2005) (three sales)).

13   Given the evidence of intentional infringement discussed above, RH's request of the

14   maximum statutory damages for "innocent" infringement is appropriate to deter Defendants'

15   conduct without creating a "windfall" for RH.  *See Dream Games of Arizona, Inc. v. PC Onsite*,

16   561 F.3d 983, 992 (9th Cir. 2009) (statutory damages are a matter of discretion constrained only

17   by the statutory minima and maxima); *see also Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233,

18   1236 (E.D. Cal. 2008) (finding non-willful statutory maximum represented a "relatively small"

19   amount given the plaintiff's allegations of willful infringement).  Thus, RH's requested $330,000

20   statutory damage amount ($30,000 for each of the 11 infringed works) is reasonable.

21   The more difficult question is the precise number of "infringers."  "The Act clearly

22   provides for an award of statutory damages for all infringements of a single work 'for which any

23   two or more infringers are liable jointly and severally.'" *Manna Textiles, Inc.*, 986 F.3d at 1265

24   (quoting 17 U.S.C. § 504(c)(1)) (emphasis in original). So, under *Manna Textiles*, a party may not

25   receive multiple awards for statutory damages when defendants are jointly and severally liable for

26   one particular infringement.  *Id.*  Here, RH requests a statutory damage award against *each*

27   defendant for *each* infringement.  But the allegations group Defendants into four instances of joint

28   infringement: the Rain & Light defendants, the Yiosi defendants, the Koko Lights defendants, and

Emilya Limited. So, RH is not entitled to a $330,000 in statutory damages from each party. Rather, each *group* of defendants is jointly and severally for a $330,000 in statutory damages.

### B.      Injunctive Relief

As discussed in this Court's previous orders, RH has met its burden to show injunctive relieve is appropriate.  (Dkt. Nos. 29, 44.)  The Court converts its prior preliminary injunctions, (Dkt. Nos. 29, 44), to permanent injunctions.  Moreover, while the Court has already ordered Defendants' websites be placed on registry-hold status, permanently disabling the offending websites is the appropriate remedy to avoid irreparable harm to RH's goodwill.  *See Chanel Inc. v. Yang*, No. C 12-4428 PJH, 2013 WL 5755217, at *12 (N.D. Cal. Oct. 21, 2013) (ordering domain name Registry to transfer or disable websites used to sell counterfeit goods).

In sum, the Court permanently enjoins each of the Defendants and their officers, agents, servants, employees and all persons acting in active concert and participation with them from:

1.      Copying, distributing, or publicly displaying any of the RH Copyrighted Works or RH Copyrighted Lighting;

2.      Using any of the RH Marks, or any marks confusingly similar thereto, in commerce in connection with the manufacturing for sale, or sale of any lighting products; and

3.      Making, selling, offering to sell, or importing into the United States any products that infringe the RH Design Patent.

The Court further orders the registrars and the registry Verisign, Inc. shall disable the following domain names:

1. <rainandlight.com>

2. <rainandlights.com>

3. <rainandlighting.com>

4. <kokolights.com>

5. <hermanlighting.com>

6. <hurdlight.com>

The Court retains jurisdiction to enforce this permanent injunction.

//

United States District Court
Northern District of California

1

<div style="writing-mode: vertical">United States District Court
Northern District of California</div>

## C.      The PayPal Accounts

As to the PayPal accounts, part of the Court's preliminary injunction included a prohibition on removing any funds from PayPal accounts used by Defendants.  (Dkt. Nos. 29, 44.)  The Court orders that any funds held by the "Keysyes" PayPal account associated with the email address xiaoxiongwenhua@alfiego.com or the yamilighting2021@gmail.com account associated with Emilya Limited be turned over to RH in partial satisfaction of the judgment.  *See Bestway*, 2022 WL 118413, at \*8 (ordering release of frozen PayPal funds).

In accordance with Fed. R. Civ. P. 62(a), the funds should be released 30 days after entry of the default judgment, which allows RH's counsel time to serve Defendants with the judgment and injunction in accordance with the Court's order permitting alternative service.  (Dkt. No. 36.)  The 30-day period gives Defendants an opportunity to file any applicable challenges or appeals.

### CONCLUSION

For the reasons stated above, RH's motion for default judgment is GRANTED.  RH is awarded statutory damages of $330,000 from each group of defendants specified below:

> (1) the "Rain & Light" group: Sichuan Wei Li Tian Xia Network Technology Co., Ltd., Hefei Gengzong Trading Co., Ltd., and Chengdu Weiqi Digital Technology Co.;
>
> (2) the "Yiosi" group: Zhongshan Tuxiang Lighting Co., Ltd., Zhongshan Yiosi Lighting Co., Ltd., Wang Xurui, and "Xie";
>
> (3) the "Koko Lights" group: Jamya Limited, Koko Light LTD, and Alfred Chen; and
>
> (4)  Emilya Limited d/b/a Herman Lighting and Hurd Light.

RH is further granted a permanent injunction as specified in part III.B.  PayPal is to release to RH the funds frozen pursuant to this Court's earlier order within 30 days after entry of judgment as partial satisfaction of judgment.  The hearing scheduled for April 6, 2023 is vacated.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 70.

Dated: April 5, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge

14